DUNCAN V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-016-CR

WILLIS DONALD DUNCAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

The trial court revoked Appellant Willis Donald Duncan’s community supervision and sentenced him to ten years’ confinement after finding true the State’s allegations that he violated two conditions of his community supervision. 
 In a single point, Duncan argues that the trial court abused its discretion by prohibiting two defense witnesses from testifying at the revocation hearing due to their violation of “the Rule.”
(footnote: 2)  
We affirm.

On September 3, 2003, Duncan pleaded guilty to the offense of driving while intoxicated—felony repetition.  The trial court sentenced Duncan to ten years’ confinement, but suspended imposition of the sentence and ordered that he be placed on community supervision for ten years.  On October 24, 2005, the State filed its first amended petition for revocation of Duncan’s suspended sentence, which alleged that Duncan violated the terms and conditions of his community supervision by consuming alcohol and by kicking Dante Redic, his girlfriend, thereby causing bodily injury to her.  At the hearing, Duncan pleaded not true to the State’s allegations that he violated the conditions of his community supervision, and the Rule was invoked before the State proceeded with its case. 

Duncan testified after the State had rested, and his attorney indicated that he planned to call a few of Duncan’s family members “as to sentencing.” Before the witnesses were called, however, the trial court informed the parties that there were two defense witnesses in the hallway outside of the courtroom who had been talking to two witnesses who had just testified for the State, Dante and her sister Kenesha.  The following exchange took place:

The Court: Go ahead.  Let me tell you that the bailiff has told me that your witnesses were in the hallway talking to two witnesses who testified for the State.  The State’s witnesses were released and your witnesses were not so. . . I mean, I advised everybody.  They were all sitting here.  And I did release those two women, but they were out in the hallway standing right in front of your group sitting on the bench telling them the whole - - because the bailiff heard them.

[Duncan’s counsel]: Then we won’t call them.

The Court: Do you need to go tell them why?

[Duncan’s counsel]: I probably need to.  Just on one issue, the alcohol, that doesn’t have anything to do with it. 

The trial court then allowed Duncan’s father, Joe Duncan, Sr., to testify briefly as to what transpired outside of the courtroom.  He denied discussing Dante’s and Kenesha’s testimony with them in the hallway.  It came to the court’s attention, however, that Mrs. Duncan, the other defense witness, had attempted to listen to Duncan, Sr. testify by standing in the courtroom’s foyer.  The trial court questioned the bailiff, Mr. Wilcox, regarding his knowledge of the events, and the following exchange took place:

The Court: Mr. Jack - - Mr. Wilcox, what did you advise the Court?  More than that, just tell us what you saw.  What did you observe?

The Baliff: When I came off the elevator, Judge, they were sitting across from them.  They were discussing - -

The Court: They, who, were sitting across from them?  Who?

The Bailiff: The two witnesses that were released from the rule [Dante and Kenesha].

The Court: Yes.

The Bailiff: Were sitting across from the defense’s witnesses.  They stopped talking when I came up there.  So I stood at the door a few minutes later and heard - - I don’t know which one was saying which, but I heard them talking about their testimony, about him coming into the house and such in the hallway, Judge.

The Court: Was Mr. Duncan, Sr. sitting out there?

The Bailiff: Yes.  They were all sitting across from them when I walked in, Judge.

The Court: And Mrs. Duncan, I guess it was, that came in a few minutes ago?

The Bailiff: Yes, Judge.

The Court: And did you tell her - - was she told to go to the hallway?

The Bailiff: Yes, Judge.

The Court: And while Mr. Duncan, Sr. was talking, who was it that tried to come back in the courtroom?

The Bailiff: Her, Judge.

The Court: Was she in the foyer?

The Bailiff: Yes, Judge.

The Court: Which I understand the foyer - - I don’t stand in the foyer - - but it’s not soundproof, is it?

The Bailiff: No, Judge.

The Court: So, the Court finds that the testimony will not be allowed for violation of the rule, and especially with Mrs. Duncan.  That just shows the level that she’d come back in after being told to leave so that she could hear what Mr. Duncan was saying.  This is not appropriate, and it won’t be allowed in this court.  You may step outside.

[Duncan’s counsel]: That’s all we have your Honor.

The Court: Did you have any additional witnesses?

[Duncan’s counsel]: No, Your Honor, we do not.  

Duncan then rested and closed. 
 
The trial court found that Duncan had violated both conditions of his community supervision, as alleged by the State, and sentenced him to ten years’ confinement. 

Texas Rule of Evidence 614, commonly referred to as “the Rule,” provides that at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.  
Tex. R. Evid.
 614; 
see also 
Tex. Code Crim. Proc. Ann.
 art. 36.06 (Vernon Supp. 2006) (stating that witnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except when permitted by the court).
(footnote: 3)  The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses’ testimony.  
Routier v. State, 
112 S.W.3d 554, 590 (Tex. Crim. App. 2003); 
Webb v. State
, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989).  When the Rule is invoked, a witness should not hear testimony in the case or talk to any other person about the case without the court’s permission.  
Minor v. State
, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref’d).

We review the trial court’s decision to exclude a witness’s testimony for an abuse of discretion.  
Taylor v. State
, 173 S.W.3d 851, 853 (Tex. App.—Texarkana 2005, no pet.).  In determining whether to disqualify a witness under the Rule, the trial court must balance the interests of the State and the accused, consider alternative sanctions, and consider the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered.  
Webb
, 766 S.W.2d at 244; 
Tell v. State
, 908 S.W.2d 535, 541 (Tex. App.—Fort Worth 1995, no pet.).  The disqualification of a defense witness must be considered in the context of the defendant’s constitutional right to call witnesses on his behalf.  
Longoria v. State
, 148 S.W.3d 657, 660 (Tex. App.—Houston [14
th Dist.] 2004, pet. ref’d).  Finally, in determining whether the trial court properly exercised its discretion in disqualifying a witness, the appellate court must determine:  (1) whether there are particular circumstances, other than the mere fact that the Rule was violated, which would tend to show the defendant or his counsel consented, procured, or otherwise had knowledge of a witness who was in violation of the Rule; and (2) if no particularized circumstances existed to justify the disqualification, whether the excluded testimony is crucial to the defense.  
Webb
, 766 S.W.2d at 245; 
Tell
, 908 S.W.2d at 541.  The appellant has the burden of establishing both prongs.  
Webb
, 766 S.W.2d at 246.

The State concedes that there were no particularized circumstances to justify the defense witnesses’ disqualification pursuant to the first 
Webb 
prong.  
See id.
 at 245; 
Tell
, 908 S.W.2d at 541.  Under the second 
Webb 
prong, Duncan argues that the testimony of the disqualified witnesses was crucial to his defense because Duncan had no other witnesses to testify on his behalf other than himself and because the fact-finder had no character evidence before it that would have “humanized” Duncan and offset the State’s punishment recommendation.  The record, however, demonstrates that Duncan did not assert any type of objection or complaint in response to the trial court’s decision to disqualify the two defense witnesses.  
See 
Tex. R. App. P.
 33.1(a)(1)(A).  His counsel merely stated, “Then we won’t call them.”
(footnote: 4)  Moreover, to preserve error on appeal, the proponent of excluded evidence must make an offer of proof or a bill of exceptions.  
See 
Tex. R. Evid. 103(
a)(2); 
Tex. R. App. P.
 33.2; 
Guidry v. State
, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).  The party complaining on appeal about a trial court’s admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge’s attention the evidence rule or statute in question and its precise and proper application to the evidence in question.  
Reyna v. State
, 168 S.W.3d 173, 
177 (Tex. Crim. App. 2005).  Without speculating, we have no idea what the disqualified witnesses’ testimony would have been and no way to determine whether it was crucial to his defense because Duncan never made an offer of proof or bill of exception.  Absent a showing of what the testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is preserved for review.  
See Guidry
, 9 S.W.3d at 153.
(footnote: 5)  Accordingly, we hold that Duncan has not preserved his point for appellate review, and we overrule it.  We affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL F: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 31, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
See 
Tex. R. Evid.
 614.

3:
None of the Rule’s exceptions are applicable here.  
See 
Tex. R. Evid.
 614.

4:
Duncan was represented by different counsel at trial and on appeal.

5:
Duncan filed a motion for new trial in which he requested that the trial court “listen to additional testimony” because the testimony of the disqualified witnesses “may have influence[d] the trier of fact, the Court, to review the totality of the circumstances and determine that the allegations by the alleged victim and her sister were untrue and unfounded.”  The mere filing of this motion for new trial was also not sufficient to preserve error because it does not identify the substance of the disqualified witnesses’ testimony with any specificity.